

**FILED**

11/9/2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PK

*pK*

**17-CV-7827**

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

)
)
**IN RE DEALER MANAGEMENT**          )          **JUDGE DER-YEGHIAYAN**
**SYSTEMS ANTITRUST LITIGATION**     )   MDL No. ____  **MAGISTRATE JUDGE VALDEZ**
)
)

**MOTION OF CDK GLOBAL, LLC, THE REYNOLDS AND REYNOLDS COMPANY,
AND COMPUTERIZED VEHICLE REGISTRATION, INC. FOR TRANSFER AND
CONSOLIDATION OF RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Defendants CDK Global, LLC and CDK Global, Inc. ("CDK"), The Reynolds and

Reynolds Company ("Reynolds"), and Computerized Vehicle Registration ("CVR") respectfully

move this Panel under 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation Rule 6.2

for an order transferring five related actions pending in five different district courts to a single

district court for consolidated or coordinated pretrial proceedings. Defendants specifically

request that the related actions be transferred to and consolidated before the Honorable Samuel

Der-Yeghiayan in the Northern District of Illinois.

The related actions, which are listed in the Schedule of Actions accompanying this

motion, include: *Motor Vehicle Software Corp. v. CDK Global, Inc., et al.*, No. 2:17-cv-00896-

DSF-AFM (C.D. Cal.); *Authenticom, Inc. v. CDK Global, LLC et al.*, No. 3:17-cv-00318-JDP

(W.D. Wis.); *Teterboro Automall, Inc. v. CDK Global, LLC et al.*, No. 2:17-cv-08714 (D.N.J.);

*Hartley Buick GMC Truck, Inc. v. CDK Global, LLC et al.*, No. 1:17-cv-07827 (N.D. Ill.); and

*John O'Neil Johnson Toyota, LLC v. CDK Global, LLC*, No. 3:17-cv-888-HSO-JCG (S.D.

Miss.). For the reasons set forth in the accompanying memorandum, Defendants' motion to

transfer and consolidate these actions for pretrial purposes should be granted.

Dated: November 7, 2017

/s/ *Aundrea K. Gulley* (with permission)
AUNDREA K. GULLEY
BRIAN T. ROSS
BRICE A. WILKINSON
ROSS M. MACDONALD
 *Gibbs & Bruns LLP*
 *1100 Louisiana Street*
 *Suite 5300*
 *Houston, TX 77002*
 *713-751-5258*

MICHAEL P. A. COHEN
 *Sheppard Mullin Richter & Hampton, LLP*
 *2099 Pennsylvania Avenue NW, Suite 100*
 *Washington, DC 20006*
 *(202) 747-1900*

MICHAEL SCARBOROUGH
DYLAN I. BALLARD
 *Sheppard Mullin Richter & Hampton, LLP*
 *Four Embarcadero Center*
 *San Francisco, CA 94111*
 *(415) 434-9100*

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

Respectfully submitted,

/s/ *Britt M. Miller*

BRITT M. MILLER
MATTHEW D. PROVANCE
 *Mayer Brown LLP*
 *71 S Wacker Drive*
 *Chicago, IL 60606*
 *(312) 782-0600*

MARK W. RYAN
MICHAEL B. KIMBERLY
MATTHEW A. WARING
 *Mayer Brown LLP*
 *1999 K Street NW*
 *Washington, D.C. 20006*
 *(202) 263-3000*

*Counsel for Defendants*
*CDK Global, LLC, CDK Global, Inc., and*
*Computerized Vehicle Registration*

2

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **IN RE DEALER MANAGEMENT** | ) | |
| **SYSTEMS LITIGATION** | ) | MDL No. ____ |
| | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
TRANSFER AND CONSOLIDATION OF RELATED ACTIONS PURSUANT TO 28
U.S.C. § 1407**

## INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation Rule 6.2(a), Defendants CDK Global, LLC and CDK Global, Inc. (collectively, "CDK"), The Reynolds and Reynolds Company ("Reynolds"),[1] and Computerized Vehicle Registration ("CVR") respectfully move the Panel to transfer five related antitrust actions ("Related Actions") in five different district courts to a single district court for consolidated or coordinated pretrial proceedings.[2] Defendants request that these Related Actions be transferred to and consolidated before the Honorable Samuel Der-Yeghiayan in the Northern District of Illinois, before whom a Related Action is currently pending.

All five Related Actions are based on similar alleged conduct, overlapping factual stories, and the same or similar legal theories. At bottom, each plaintiff alleges that, in February 2015, CDK and Reynolds entered into an unlawful conspiracy to drive other firms out of the purported secondary markets for data "integration" (*i.e.*, data extraction) on CDK's and Reynolds's proprietary enterprise software systems for automobile dealerships, and to restrict access to those systems to the detriment of plaintiffs. The Related Actions thus all revolve around common questions of fact that warrant transfer and consolidation.

Moreover, the just and efficient conduct of these Related Actions would best be served by transfer and consolidation. It would be far more efficient for the parties and the judiciary to

---

[1]    Reynolds files this motion without waiver of, and reserving all rights with respect to, the controlling arbitration provisions in its dealer and vendor contracts. Reynolds will move to compel arbitration at the appropriate time.

[2]    The Related Actions include: *Motor Vehicle Software Corp. v. CDK Global, Inc., et al.*, No. 2:17-cv-00896-DSF-AFM (C.D. Cal.) ("*MVSC*"); *Authenticom, Inc. v. CDK Global, LLC et al.*, No. 3:17-cv-00318-JDP (W.D. Wis.); *Teterboro Automall, Inc. v. CDK Global, LLC et al.*, No. 2:17-cv-08714 (D.N.J.); *Hartley Buick GMC Truck, Inc. v. CDK Global, LLC et al.*, No. 1:17-cv-07827 (N.D. Ill.); and *John O'Neil Johnson Toyota, LLC v. CDK Global, LLC*, No. 3:17-cv-888-HSO-JCG (S.D. Miss.).

coordinate pretrial proceedings in a single, geographically convenient forum close to CDK's and Reynolds's headquarters (where most of the key witnesses and other pieces of factual evidence are located) than for the Related Actions to be litigated in parallel in five different courts across the country, including on both coasts. The motion for transfer and consolidation should therefore be granted.

## BACKGROUND

### A.     Participants In The Automotive Marketplace

CDK Global, Inc. (which wholly owns CDK Global, LLC) is a Delaware corporation that has its principal place of business in Hoffman Estates, Illinois, which is in the Northern District of Illinois. Reynolds is an Ohio corporation with its principal offices in Kettering, Ohio and Houston, Texas. CDK and Reynolds provide enterprise software and hardware systems (called dealer management systems or DMSs) to new vehicle franchised auto dealers in the United States. Other providers, including DealerTrack, a division of Cox Automotive, also offer DMS systems. CDK and other DMS providers also offer DMS services to non-franchised and used car dealers. Dealers use DMSs to manage core business functions, including sales, service, and consumer financing.

Many dealers contract with one or more third-party software vendors who offer applications that also perform sales and other operational functions for dealerships. Hundreds of different vendors offer a wide variety of services to dealerships in this way. For example, some third-party applications help dealers schedule service appointments. Other vendors, like TrueCar, generate sales leads from consumer-facing websites and then validate particular vehicle sales as being linked to those leads. Still others provide automated license-plate registration services at the time of sale, manage customer outreach, help with dealership marketing, information technology, websites, and so forth.

2

Some application vendors utilize consumer and inventory data collected by dealers. An application provider like TrueCar, for example, may access a dealer inventory and completed vehicle sales information. Many vendors only leverage data "pulled" from the DMS. Others, however, desire to "push" or "writeback" altered or edited data into the DMS so that the information can populate the DMS, as when a vendor amends individual customer records or inputs a service appointment in the system.

Certain DMS platforms permit independent data "integrators" (in effect, data extractors) such as Authenticom to act as middlemen between the DMS and application vendors. These data extractors obtain data from the DMS and furnish it to application vendors through the extractors' own software interfaces. Other DMS providers (notably, CDK and Reynolds), do not permit third-party data extractors to integrate with the DMS, providing their own, secure integrations instead.

### B. The Five Related Actions

On February 3, 2017, Motor Vehicle Software Corporation ("MVSC")—a vendor that provides electronic vehicle registration and titling services to dealerships—filed an antitrust action (*MVSC*) against CDK, Reynolds, and Computerized Vehicle Registration, a joint venture between CDK and Reynolds that also provides vehicle registration and titling services. This action, *Motor Vehicle Software Corporation v. CDK Global, Inc., et al.*, No. 2:17-cv-00896-DSF-AFM (C.D. Cal.), is currently pending in the Central District of California. *See MVSC* SAC. MVSC is a California corporation with its principal place of business in Agoura Hills, California (located in Los Angeles County). *Id.* ¶ 19. MVSC is represented by Kellogg, Hansen, Todd, Figel and Frederick, P.L.L.C. (along with local counsel). *See MVSC* SAC.[3] MVSC

---

[3]     This firm was formerly called Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., and that name appears on some early pleadings.

recently filed a Second Amended Complaint, following the court's partial dismissal of its First Amended Complaint. *See MVSC* Dkt. 73, 76.

The next Related Action, *Authenticom, Inc. v. CDK Global, LLC et al.*, No. 3:17-cv-00318-JDP (W.D. Wis.) was filed on May 1, 2017, in the Western District of Wisconsin by the same attorneys at Kellogg, Hansen (along with local counsel). *See Authenticom* Compl. The plaintiff in *Authenticom* is a Wisconsin firm that provides data "integration" services to vendors in the automotive industry. On July 28, 2017, the district court in *Authenticom* entered preliminary injunctions against CDK and Reynolds (*Authenticom* Dkt. 192, 193), which CDK and Reynolds appealed to the Seventh Circuit (*id.* Dkt. 194, 196). Those injunctions were promptly stayed by the Seventh Circuit (*id.* Dkt. 210), and yesterday, that Court vacated the preliminary injunction, holding that the terms of the injunction went "far beyond" the scope of a proper remedy for the plaintiff's conspiracy allegations. Opinion at 14, *Authenticom, Inc. v. CDK Global, LLC et al.*, Nos. 17-2540 & 17-2541 (7th Cir. Nov. 6, 2017) ("*Authenticom* Op.").

The other three Related Actions, *Teterboro Automall, Inc. v. CDK Global, LLC et al.*, No. 2:17-cv-08714 (D.N.J.), *Hartley Buick GMC Truck, Inc. v. CDK Global, LLC et al.*, No. 1:17-cv-07827 (N.D. Ill.), and *John O'Neil Johnson Toyota, LLC v. CDK Global, LLC*, No. 3:17-cv-888-HSO-JCG (S.D. Miss.), were respectively filed on October 19, 2017, in the District of New Jersey (*see Teterboro Automall* Compl.); on October 31, 2017, in the Northern District of Illinois (*see Hartley Buick* Compl.); and on November 3, 2017, in the Southern District of Mississippi (*see John O'Neil* Compl.). The named plaintiffs in these cases are auto dealerships (located in New Jersey, New York, and Mississippi, respectively) that seek to represent putative nationwide classes of dealers that purchased DMS service from CDK and/or Reynolds. CDK and Reynolds have not yet responded to these complaints.

4

Before filing this motion, Defendants, through their undersigned counsel, notified all plaintiffs' counsel regarding Defendants' intent to move to transfer and consolidate the Related Actions to the Northern District of Illinois before Judge Der-Yeghiayan.

### C.   The Common Allegations Against CDK and Reynolds.

Although the allegations in each Related Action vary slightly to fit the role of the particular plaintiff in the automotive marketplace (*i.e.*, vendor, data "integrator," or dealer), each of these lawsuits rests on the same or similar core factual allegations and legal theories.

**All five Related Actions allege the same underlying antitrust conspiracy.** Plaintiffs in each Related Action basically recite the same alleged facts. Stated simply, the story they spin is that CDK and Reynolds conspired to control purported markets for data "integration" services on their respective DMS platforms and exclude independent data "integrators." This, in turn, allows CDK and Reynolds to charge vendors supracompetitive prices for access to DMS data through CDK's Third-Party Access program ("3PA") and Reynolds's Reynolds Certified Interface ("RCI") program, which plaintiffs characterize as in-house data "integration" providers. *See, e.g.*, *MVSC* SAC ¶ 133; *Authenticom* Compl. ¶¶ 14-15; *Teterboro Automall* Compl. ¶ 12; *Hartley Buick* Compl. ¶ 19; *John O'Neil* Compl. ¶ 13.[4]

More specifically, each plaintiff alleges that, prior to 2015, CDK and Reynolds competed in the purported market for data "integration" services because CDK (through subsidiaries) provided "integration" services with respect to data stored on Reynolds's DMS, which could also be accessed through RCI. *See, e.g.*, *MVSC* SAC ¶ 134; *Authenticom* Compl. ¶ 91; *Teterboro*

---

[4]   The complaint is the first docket entry in each Related Action; in *MVSC*, Defendants cite the operative Second Amended Complaint. Defendants attach those complaints, as well as the relevant docket sheets, as exhibits to this memorandum. *See* **Exhibit A** (*MVSC* docket sheet and Second Amended Complaint); **Exhibit B** (*Authenticom* docket sheet and complaint); **Exhibit C** (*Teterboro Automall* docket sheet and complaint); **Exhibit D** (*Hartley Buick* docket sheet and complaint); **Exhibit E** (*John O'Neil* docket sheet and complaint).

*Automall* Compl. ¶ 9; *Hartley Buick* Compl. ¶ 15; *John O'Neil* Compl. ¶ 15. (Reynolds has never provided "integration" services with respect to data stored on CDK's or any other DMS). *See MVSC* SAC ¶ 134. The plaintiffs allege that, in February 2015, CDK and Reynolds entered into an unlawful horizontal agreement to divide the purported market for data "integration," pursuant to which CDK would no longer provide "integration" services with respect to data on Reynolds's DMS. *See, e.g.*, *MVSC* SAC ¶ 134; *Authenticom* Compl. ¶ 132; *Teterboro Automall* Compl. ¶ 9; *Hartley Buick* Compl. ¶ 17; *John O'Neil* Compl. ¶ 17. This agreement, according to plaintiffs, has allowed CDK and Reynolds each to become the exclusive provider of "integration" services on their respective DMSs. *See, e.g.*, *MVSC* SAC ¶ 148; *Authenticom* Compl. ¶ 125; *Teterboro Automall* Compl. ¶ 10; *Hartley Buick* Compl. ¶ 17; *John O'Neil* Compl. ¶ 17. Plaintiffs allege that CDK and Reynolds charge vendors inflated prices for data access through 3PA and RCI, and they allege that vendors pass these inflated prices on to the dealers that use the vendors' software applications. *See, e.g.*, *MVSC* SAC ¶ 92; *Authenticom* Compl. ¶¶ 125, 130; *Teterboro Automall* Compl. ¶ 12; *Hartley Buick* Compl. ¶ 22; *John O'Neil* Compl. ¶ 22.

**Plaintiffs' virtually identical claims**. Plaintiffs in the Related Actions all allege some combination of the same four types of Sherman Act violations:

- Horizontal conspiracy allegations: Plaintiffs claim that CDK and Reynolds entered into an agreement to divide the data "integration" market and exclude independent "integrators" (*MVSC* SAC ¶¶ 206-15; *Authenticom* Compl. ¶¶ 242-52; *Teterboro Automall* Compl. ¶¶ 118-24; *Hartley Buick* Compl. ¶¶ 128-37; *John O'Neil* Compl. ¶¶ 128-37);

- Monopolization allegations: Plaintiffs claim that CDK and Reynolds have monopolized the purported secondary markets for data "integration" services on

their respective DMSs (*MVSC* SAC ¶¶ 216-24; *Authenticom* Compl. ¶¶ 270-76; *Teterboro Automall* Compl. ¶¶ 145-52; *Hartley Buick* Compl. ¶¶ 138-43; *John O'Neil* Compl. ¶¶ 138-43);

- Exclusive dealing allegations: Plaintiffs claim that CDK and Reynolds require vendors to obtain data solely from 3PA/RCI and require dealers to agree not to provide any third party with access to the DMS (*Authenticom* Compl. ¶¶ 253-61; *Teterboro Automall* Compl. ¶¶ 125-34)[5]; and

- Tying allegations: Plaintiffs claim that CDK and Reynolds require dealers to use CDK's or Reynolds's data "integration" services as a condition of purchasing DMS service (*Authenticom* Compl. ¶¶ 262-69; *Teterboro Automall* Compl. ¶¶ 135-44).

**Plaintiffs' overlapping putative classes**. The named plaintiffs in the three Related Actions styled as putative *class action*s (*Teterboro Automall*, *Hartley Buick*, and *John O'Neil*) purport to represent materially identical nationwide classes of franchised automobile dealerships that purchased DMS services from CDK or Reynolds. *Teterboro Automall* Compl. ¶ 105; *Hartley Buick* Compl. ¶ 111; *John O'Neil* Compl. ¶ 110.

**Plaintiffs' materially identical prayers for relief**. Finally, all plaintiffs pray for materially identical relief, including treble damages, permanent injunctive relief, pre- and/or post-judgment interest, and attorneys' fees. *See MVSC* SAC Prayer for Relief; *Authenticom*

---

[5]     The plaintiffs in *Hartley Buick* and *John O'Neil* do not state a separate cause of action for exclusive dealing, but they allege at length—in word-for-word identical language—that CDK and Reynolds employ unlawful exclusive dealing agreements. *Hartley Buick* Compl. ¶¶ 89-96; *John O'Neil* Compl. ¶¶ 89-96.

Compl. Prayer for Relief; *Teterboro Automall* Compl. Prayer for Relief; *Hartley Buick* Compl. ¶¶ 171-76; *John O'Neil* Compl. ¶¶ 171-76.[6]

## ARGUMENT

### I.      The Panel Should Transfer and Consolidate the Related Actions Pursuant to 28 U.S.C. § 1407.

Transfer and consolidation is appropriate in these cases because the factual allegations in the five Related Actions unquestionably overlap. Indeed, counsel who represent the plaintiffs in the *MVSC* and *Authenticom* actions have acknowledged that they are Related Actions, stating the rulings in one case are "dispositive" of the other and the two cases are "based on the same facts." MVSC Opp. to Mot. to Dismiss (Dkt. 66) at 2. *See also id.* at 10 (stating that the *Authenticom* litigation is "[b]ased on the same evidence supporting the allegations in MVSC's Complaint."). Under 28 U.S.C. § 1407, when actions "involving one or more common questions of fact are pending in different districts," the Panel may transfer the cases to a single district for consolidated pretrial proceedings. 28 U.S.C. § 1407(a). The Panel "shall" order transfer and consolidation when it determines that a transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* Each of these criteria is easily satisfied here.

### A.      The Related Actions Involve Common Questions of Fact and Law.

It is manifestly apparent that the five Related Actions involve numerous common questions of fact and law for purposes of § 1407.[7] As detailed above, each of the Related Actions

----

[6]      In addition to the forms of relief common to all the Related Actions, the plaintiffs in *Teterboro Automall* and *Hartley Buick* seek restitution and/or disgorgement under New Jersey, New York, and Mississippi state law, respectively. *Teterboro Automall* Compl. Prayer for Relief; *Hartley Buick* Compl. ¶ 172; *John O'Neil* Compl. ¶ 172.

[7]      By arguing that transfer and consolidation or coordination under 28 U.S.C. § 1407 are appropriate, Defendants do not waive and expressly reserve their right to oppose certification of

8

is centered on essentially the same alleged antitrust conspiracy between CDK and Reynolds to secure control of the purported data "integration" market—despite minor variations in the way each plaintiff tells the story. In addition, three of the five Related Actions purport to bring claims on behalf of a nationwide class of dealers who bought DMS service from CDK or Reynolds. The plaintiffs in the Related Actions also pray for materially identical relief. The actions thus involve numerous common questions of fact, including but not limited to:

- Whether CDK and Reynolds in fact engaged in a horizontal conspiracy and what the terms of the alleged conspiracy were;

- Whether CDK's and Reynolds's restrictions on access to their DMSs by third-party data "integrators" served procompetitive purposes;

- The effect of the alleged conspiracy on prices in the alleged DMS market or in the purported market for data "integration" services; and

- Whether the purported secondary markets for data "integration" services on CDK's and Reynolds's respective DMSs exist.

Indeed, the Panel has often ordered transfer and consolidation or coordination in matters in which a number of pending actions allege the same underlying antitrust conspiracy. For example, in *In re Travel Agent Comm'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003), the Panel held that consolidation was warranted because the three related actions each "involve[d] allegations of a conspiracy for the unlawful reduction and elimination of commissions to travel agents, and factual questions concerning the existence, duration, and

---

the putative classes in *Teterboro Automall*, *Hartley Buick*, and *John O'Neil*. The relevant threshold inquiry under Rule 23 generally concerns whether a case presents common questions *among plaintiffs and class members*, whereas the inquiry under § 1407(a) is whether common questions arise *across different cases*. Therefore, any analysis under § 1407 is distinct from an analysis of whether the requirements of Rule 23 have been satisfied in *Teterboro Automall*, *Hartley Buick*, or *John O'Neil*.

participants in the alleged conspiracy will be common to each action." The Panel rejected the

notion that "unique matters" in a particular case precluded consolidation, observing that "Section

1407 does not require a complete identity or even majority of common factual and legal issues as

a prerequisite to centralization" and that "the presence of different nuances [in different actions]

does not negate the existence of common questions of fact." *Id.*

So too here. The plaintiffs in the Related Actions all allege the same underlying antitrust

conspiracy, raising numerous common questions of fact, a fact that all but one of the plaintiffs

has either explicitly (in the case of *MVSC* and *Authenticom*) or implicitly (in the case of

*Teterboro*) acknowledged in their court filings. *See* p. 8, *supra* (the *Authenticom* litigation is

"[b]ased on the same evidence supporting the allegations in MVSC's Complaint."); *Teterboro*

Compl. (citing extensively to the *Authenticom* and *MVSC* filings as support for its factual

allegations). As in *Travel Agent Commission* and other matters involving parallel antitrust suits,

therefore, "[c]entralization" is "necessary in order to eliminate duplicative discovery, prevent

inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the

judiciary." 290 F. Supp. 2d at 1382; *see also, e.g., In re: Polyurethane Foam Antitrust Litig.*, 753

F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) (consolidation was warranted where "Plaintiffs in all

actions allege that the eleven defendants and their co-conspirators engaged in a conspiracy to fix,

raise, maintain and/or stabilize the prices charged for polyurethane foam sold in the United

States.") *In re Urethane Antitrust Litig.*, 333 F. Supp. 2d 1379, 1381 (J.P.M.L. 2004)

(centralization of "purported class actions brought by plaintiffs who allege that defendants have

engaged in a conspiracy to fix and maintain the price of urethane and urethane chemicals" was

"necessary").

10

**B.      Transfer Would Be Convenient for the Parties and Witnesses and Would Promote Judicial Efficiency.**

Transfer would also be convenient for the parties and witnesses and would promote judicial efficiency. Because the complaints in the Related Actions all allege effectively the same antitrust conspiracy between CDK and Reynolds (and at least two of the plaintiffs are represented by the same counsel), the plaintiffs in the Related Actions are likely to seek discovery of the same information on the same topics. Moreover, new cases may well continue to be filed, as additional plaintiffs copy the approach taken by plaintiffs in *Teterboro Automall*, *Hartley Buick*, and *John O'Neil* and bring putative class actions on behalf of dealers (or other third parties, such as application vendors) that piggyback on the allegations of the earlier Related Actions.

Without pretrial consolidation or coordination, therefore, the courts and the parties would spend significant time and resources engaging in repetitive motion practice. The courts and the parties would also need to re-litigate overlapping pretrial issues in various courts. Not only would this be inefficient, but it would also increase the risk of conflicting pretrial rulings issued by different courts. *See In re Allstate Ins. Co. FLSA Litig.*, 283 F. Supp. 2d 1358, 1359 (J.P.M.L. 2003) (ruling that consolidation was "necessary in order to avoid duplication of discovery, prevent inconsistent pretrial rulings and conserve the resources of the parties, their counsel and the judiciary"); *In re Multidistrict Civil Actions Involving Fourth Class Postage Regulations*, 298 F. Supp. 1326, 1327 (J.P.M.L. 1969) (the "interests of justice are not ordinarily served" by "inconsistent decisions" among courts).

Transfer and consolidation, by contrast, would allow the courts and the parties to avoid duplicative discovery or inconsistent rulings on similar pretrial motions. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 447 F. Supp. 468, 471 (J.P.M.L. 1978) (consolidation

11

warranted because the parties "will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions"); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) ("TVA and Westinghouse will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions in order to prove their conspiracy allegations. The benefits of having a single judge supervise this pretrial activity are obvious."). And transfer and consolidation would forestall conflicting proceedings on the *Teterboro Automall*, *Hartley Buick*, and *John O'Neil* plaintiffs' attempts to certify "overlapping, [even] if not identical, nationwide classes." *Polyurethane*, 753 F. Supp. 2d at 1377; *see also, e.g., In re Merck & Co. Secs., Derivative & ERISA Litig.*, 360 F. Supp. 2d 1375, 1377 (J.P.M.L. 2005); *In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001).

Accordingly, transfer of the Related Actions to a single district court for consolidated or coordinated pretrial proceedings is appropriate.

## II.     The Related Actions Should Be Transferred to and Consolidated in the Northern District of Illinois.

Defendants also respectfully request that the Related Actions be transferred to the Northern District of Illinois and consolidated before Judge Der-Yeghiayan for pretrial proceedings. Judge Der-Yeghiayan is already presiding over *Hartley Buick*, which is one of the Related Actions.

The Northern District of Illinois is the most convenient forum for the parties and the witnesses. CDK is headquartered in Hoffman Estates, Illinois, which is in the Northern District

12

of Illinois. And Reynolds is headquartered in Kettering, Ohio[8]—approximately 300 miles from Chicago. Transfer and consolidation in that District thus would be convenient for witnesses located at CDK's and Reynolds's corporate headquarters, who are likely to be the key witnesses for discovery purposes and in any trial on the merits. And as this Panel has frequently noted, the Northern District of Illinois "conveniently located and readily accessible for most . . . litigants" in other parts of the country as well. *See In re Starlink Corn Prods. Liab. Litig.*, 152 F. Supp. 2d 1378, 1380-81 (J.P.M.L. 2001). For this reason, the Panel has transferred and consolidated numerous cases before the Northern District of Illinois where, as here, an action was already pending there. *E.g.*, *id.*; *In re: AIG Workers Comp. Ins. Policyholder Litig.*, 11 F. Supp. 3d 1349, 1350 (J.P.M.L. 2014) ("The Northern District of Illinois is a centrally located and convenient forum."); *In re Ocean Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1379 (J.P.M.L. 2004) (ordering transfer because of the District's "geographically central[]" location and because actions already were pending in the Northern District of Illinois); *In re Aimster Copyright Litig.*, 177 F. Supp. 2d 1380, 1382 (J.P.M.L. 2001) (Northern District of Illinois was "a convenient, central forum").

In contrast to the Northern District of Illinois, each of the other forums in which Related Actions are pending (California, New Jersey, Mississippi, and Wisconsin) would be inconvenient for Defendants—and for the plaintiffs other than the particular plaintiff that sued in each forum. It makes no more sense for the parties in the *Authenticom*, *Teterboro*, *Hartley Buick*, and *John O'Neil* to fly cross-country to California to appear before Judge Fischer (the judge in the first-filed *MVSC* case) than it does for all of them to fly to the other coast to appear before Judge

---

[8]     Some of Reynolds's witnesses are based in its Houston, Texas office, which is also more convenient to Chicago (2 hour 20 min direct flight) than to Los Angeles (3 hour 45 min direct flight), Newark (3 hour 20 min direct flight), or Madison (4 hours + with connections).

Chesler in New Jersey (the judge presiding over the *Teterboro* action) or to Gulfport, Mississippi to appear before Judge Ozerden (the judge presiding over the *John O'Neil* action). And although the Western District of Wisconsin is somewhat centrally located, Madison is not as centrally located or as easy to get to as is Chicago, and the resources of the District not as robust. In short, the convenience of the parties and witnesses thus strongly supports transfer and consolidation in the Northern District of Illinois.

Consolidation in the Northern District of Illinois is also warranted because the Northern District of Illinois is subject to the appellate jurisdiction of the Seventh Circuit, which has now issued its opinion on CDK's and Reynolds's appeals of the preliminary injunctions in *Authenticom*. Consolidating the Related Actions in a forum in the Seventh Circuit would provide the parties in each case the benefit of a single, binding appellate decision on the permissible scope of any preliminary injunction, which will substantially narrow the scope of disputed issues should the plaintiffs in other Related Actions move for a preliminary injunction. The Seventh Circuit's opinion also commented on the potential viability of several of the claims in *Authenticom*: the court of appeals stated that it was "dubious in the extreme" that CDK's and Reynolds's practices constituted tying (*Authenticom* Op. 13), and it indicated that the plaintiff's monopolization claim was foreclosed by Supreme Court precedent (*id.* at 14). This opinion would provide helpful guidance to the courts and parties in the other cases as they proceed to discovery.

Finally, whereas the Related Actions are at various stages of proceedings, none has advanced to the point where a transfer to the Northern District of Illinois would prejudice any party. The *MVSC* case is still at the motion to dismiss stage with no pre-trial schedule having been set and the *Teterboro*, *Hartley Buick*, and *John O'Neil* cases were just recently filed. As for

14

*Authenticom*, notwithstanding the preliminary injunction proceedings and the entry of a pre-trial schedule (including a trial date in late 2018), Defendants' motions to dismiss remain pending and the parties are just beginning to engage in discovery, although no documents have been exchanged or depositions taken or scheduled. Thus, as detailed above (at 11-12), transfer and consolidation will only aid in the efficient resolution of all of these related claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Panel transfer the Related Actions to a single district court for consolidated or coordinated pretrial proceedings under 28 U.S.C. § 1407. Moreover, Defendants specifically request that the Panel order the cases transferred to the Northern District of Illinois and consolidated before the Honorable Samuel Der-Yeghiayan.

Dated: November 7, 2017

/s/ *Aundrea K. Gulley* (with permission)
AUNDREA K. GULLEY
BRIAN T. ROSS
BRICE A. WILKINSON
ROSS M. MACDONALD
  *Gibbs & Bruns LLP*
  *1100 Louisiana Street*
  *Suite 5300*
  *Houston, TX 77002*
  *713-751-5258*

MICHAEL P. A. COHEN
  *Sheppard Mullin Richter & Hampton, LLP*
  *2099 Pennsylvania Avenue NW, Suite 100*
  *Washington, DC 20006*
  *(202) 747-1900*

MICHAEL SCARBOROUGH
DYLAN I. BALLARD
  *Sheppard Mullin Richter & Hampton, LLP*
  *Four Embarcadero Center*
  *San Francisco, CA 94111*

Respectfully submitted,

/s/ *Britt M. Miller*

BRITT M. MILLER
MATTHEW D. PROVANCE
  *Mayer Brown LLP*
  *71 S Wacker Drive*
  *Chicago, IL 60606*
  *(312) 782-0600*

MARK W. RYAN
MICHAEL B. KIMBERLY
MATTHEW A. WARING
  *Mayer Brown LLP*
  *1999 K Street NW*
  *Washington, D.C. 20006*
  *(202) 263-3000*

*Counsel for Defendants*
*CDK Global, LLC, CDK Global, Inc., and*
*Computerized Vehicle Registration*

15

*(415) 434-9100*

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
MDL-_____ - In re Dealer Management Systems Antitrust Litigation.

SCHEDULE OF ACTIONS

| Case Captions | Court | Civil Action No. | Judge |
|---|---|---|---|
| **Plaintiff:**<br>Motor Vehicle Software Corporation<br>**Defendants:**<br>CDK Global, Inc.; The Reynolds and Reynolds Company; Computerized Vehicle Registration, Inc. a/k/a CDK Vehicle Registration, Inc. | C.D. Cal., Western Division | 2:17-cv-00896 | Dale S. Fischer |
| **Plaintiff:**<br>Authenticom, Inc.<br>**Defendants:**<br>CDK Global, LLC and The Reynolds and Reynolds Company | W.D. Wis. | 3:17-cv-00318 | James D. Peterson |
| **Plaintiff:**<br>Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram<br>**Defendants:**<br>CDK Global, LLC and The Reynolds and Reynolds Company | D.N.J. | 2:17-cv-08714 | Stanley R. Chesler |
| **Plaintiff:**<br>Hartley Buick GMC Truck, Inc.<br>**Defendants:**<br>CDK Global, LLC and The Reynolds and Reynolds Company | N.D. Ill., Eastern Division | 1:17-cv-07827 | Samuel Der-Yeghiayan |
| **Plaintiffs:**<br>John O'Neil Johnson Toyota<br>**Defendant:**<br>CDK Global, LLC | S.D. Miss., Northern Division | 3:17-cv-888 | Sul Ozerden |

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

### MDL-____ - In re Dealer Management Systems Antitrust Litigation.

#### Proof of Service

I hereby certify that on November 7, 2017, a copy of the foregoing Motion,

Memorandum, Schedule of Actions, and this Certificate was served via UPS overnight delivery

on the following recipients:

Clerk, U.S. District Court for the Central District of California
350 W 1st Street, Suite 4311
Los Angeles, CA 90012-4565

Clerk, U.S. District Court for the Western District of Wisconsin
120 N. Henry Street, Room 320
Madison, WI 53703

Clerk, U.S. District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Clerk, U.S. District Court for the Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

Clerk, U.S. District Court for the Southern District of Mississippi
United States Courthouse
501 E. Court Street
Suite 2.500
Jackson, MS 39201

I further certify that on November 7, 2017, a copy of the foregoing Motion,

Memorandum, Schedule of Actions, and this Certificate was served via email on the following

recipients:

Michael N. Nemelka
Aaron M. Panner
Joshua D. Branson
Joshua Hafenbrack

Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W.
Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Fax: (202) 326-7999
mnemelka@kellogghansen.com
apanner@kellogghansen.com
jbranson@kellogghansen.com
jhafenbrack@kellogghansen.com

Gary Salomons
Daniel J. Friedman
GabrielSalomons, LLP
16311 Ventura Blvd., Suite 970
Encino, CA 91436
Telephone: (818) 906-3700
Fax: (818) 906-2142
gary@gabrielsalomons.com
daniel@gabrielsalomons.com
**Counsel for Plaintiff:** Motor Vehicle Software Corporation
C.D. Cal., No. 2:17-cv-00896

Michael N. Nemelka
Aaron M. Panner
Joshua D. Branson
Joshua Hafenbrack
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W.
Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Fax: (202) 326-7999
mnemelka@kellogghansen.com
apanner@kellogghansen.com
jbranson@kellogghansen.com
jhafenbrack@kellogghansen.com

Jennifer L. Gregor
Mark W. Hancock
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
Madison, Wisconsin 53703
Telephone: (608) 284-2629
Fax: (608) 257-0609
jgregor@gklaw.com

mhancock@gklaw.com

**Counsel for Plaintiff:** Authenticom, Inc.
W.D. Wis., No. 3:17-cv-00318

James E. Cecchi
Lindsey Taylor
Carella, Byrne, Cecchi, Ostein, Brody & Agnello P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
JCecchi@carellabyrne.com
LTaylor@carellabyrne.com

Peggy J. Wedgworth
Andrei V. Rado
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
pwedgworth@milberg.com
arado@milberg.com

Leonard A. Bellavia
Steven Blatt
Bellavia Blatt & Crossett, PC
200 Old Country Road, Suite 400
Mineola, New York 11501
Telephone: (516) 873-3000
lbellabia@dealerlaw.com
smalone@dealerlaw.com

**Counsel for Plaintiff:** Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram
D.N.J., No. 2:17-cv-08714

Gary L. Specks
Kaplan Fox & Kilsheimer LLP
423 Sumac Road
Highland Park, Illinois 60035
Telephone: (847) 831-1585
Fax: (847) 831-1580
gspecks@kaplanfox.com

Jonathan W. Cuneo
Joel Davidow
Jennifer E. Kelly

Victoria Sims
Yifei "Evelyn" Yi
Cuneo Gilbert & LaDuca, LLP
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
jkelly@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Arthur N. Bailey
Rupp Baase Pfalzgraf Cunningham LLC
111 W 2nd Street, Suite 1100
Jamestown, NY 14701
Telephone: 716-664-2967
bailey@ruppbaase.com
**Counsel for Plaintiff:** Hartley Buick GMC Truck, Inc.
N.D. Ill., No. 1:17-cv-07827

John Barrett
David McMullan
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Robert A. Clifford
Shannon M. McNulty
Kristofer S. Riddle
Clifford Law Offices, P.C.
120 N. LaSalle Street, 31st Floor
Chicago, IL 60602
Telephone: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SMM@cliffordlaw.com
KSR@cliffordlaw.com
**Counsel for Plaintiff:** John O'Neil Johnson Toyota, LLC
S.D. Miss., No. 3:17-cv-00888

4

/s/ *Britt M. Miller*

Britt M. Miller
*Counsel for Defendants*
*CDK Global, LLC, CDK Global, Inc., and*
*Computerized Vehicle Registration*

# EXHIBIT A